1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12   HELEN EVENFE,                          Case No. 15-CV-05457-LHK

13          Plaintiff,                       **ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTION TO
14          v.                               DISMISS**

15   ESALEN INSTITUTE, et al.,               Re: Dkt. No. 12

16          Defendants.

17

18        Plaintiff Helen Evenfe ("Plaintiff") brings this action against the Esalen Institute; Scott

19   Stillinger, the Esalen Institute's Head of Human Resources and Education; the Esalen Institute's

20   Board of Trustees; and the individual members of Esalen Institute's Board of Trustees

21   (collectively, "Defendants").  Before the Court is Defendants' motion to dismiss certain

22   Defendants and causes of action in the First Amended Complaint.  ECF No. 12 ("Mot."); ECF No.

23   7 ("FAC").  The Court finds this matter suitable for decision without oral argument pursuant to

24   Civil Local Rule 7-1(b) and thus VACATES the motion hearing set for July 28, 2016, at 1:30 p.m.

25   Having considered the submissions of the parties, the relevant law, and the record in this case, the

26   Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

27   **I.      BACKGROUND**

28
                                             1

United States District Court
Northern District of California

### A. Factual Background

The causes of action in this case arise from Plaintiff's alleged employment at the Esalen Institute ("Esalen") from 2008 to 2015. Plaintiff avers that, at some point in 2008, Esalen Security Gate Supervisor Carolin Phillips approached Plaintiff, a licensed nurse, to ask if Plaintiff would assist Esalen on a temporary, three-month basis to "help with the medical needs of the Esalen Community." FAC ¶ 31. Plaintiff states that she was asked to carry a two-way radio with her at all times in order to ensure her availability to assist with medical emergencies. *Id.* In addition to providing medical services, Plaintiff also worked for ten hours a week at Esalen's Gazebo Preschool in exchange for room and board. *Id.*

In February 2009, Phillips offered Plaintiff a position in Esalen's Work Scholar Program. This position was unpaid, but provided Plaintiff room and board. *Id.* ¶ 32. After completing the program, Plaintiff agreed to work as a security guard at Esalen for 32 hours a week. Plaintiff was paid $8 per hour for her work and provided room and board. *Id.* Plaintiff worked as a security guard for about a year and a half, from March 2009 through September 2010.

Plaintiff alleges that, while working as a security guard, she was required to follow Esalen's "Gate Manual." According to Plaintiff, "[c]onspicuously absent from . . . the 'Gate Manual' are any scheduled 'Meal and Rest' Breaks, as required by law." *Id.* ¶ 37. In addition, Plaintiff alleges that Esalen required her to work multiple consecutive shifts without legally mandated breaks. *Id.* ¶ 36. Moreover, while working as a security guard, Plaintiff alleges that she was required to carry a two-way radio at all times in order to continue to assist with medical emergencies. *Id.* Plaintiff was not paid for providing such assistance. Plaintiff further alleges that Esalen required Plaintiff "to produce her California RN [Registered Nurse] license, to obtain an up to date Advanced Cardiac Life Support ('ACLSA') Certification, Basic Life Support Certification ('BLS'), and to obtain Medical Malpractice Insurance—all at her own expense." *Id.* ¶ 39.

In September 2010, after Plaintiff completed her work as a security guard, Esalen's managing agents asked Plaintiff to stay on and continue to provide medical assistance. *Id.* ¶ 38. In exchange for Plaintiff's medical assistance, Esalen "offered [Plaintiff] property privileges,

1   including workshops, treatments at [Esalen at] staff rates, food, and a place to park and live." *Id.*

2   At some point in 2010, Bill James, a member of Esalen's Board of Trustees, learned about

3   Plaintiff's circumstances and offered to pay for Plaintiff's medical malpractice insurance. *Id.* ¶ 39.

4      Outside of James's assistance, however, Plaintiff alleges that she was not financially

5   compensated for providing medical services, despite multiple requests by Plaintiff for payment. In

6   particular, Plaintiff focuses on a 2012 letter prepared by Plaintiff's colleague, medical doctor Gino

7   Romano, which was sent to Esalen. In this letter, Romano states that "[c]urrently [Plaintiff] and I

8   'volunteer' our medical services 24 hours a day mostly seven days a week for an unofficial

9   emergency on call service to Esalen. This service has resulted in several life-saving

10  interventions." *Id.* ¶ 42. After reviewing the various services that Plaintiff and Romano had

11  provided since 2009, Romano concluded that "it would be prudent to formalize the program and

12  ensure adequate compensation for [Plaintiff and Romano's] services." *Id.* (emphasis removed).

13  Esalen denied Romano's request.

14     In December 2011, Plaintiff suffered a leg injury while walking "in front of [Esalen's]

15  main entrance." *Id.* ¶ 44. Plaintiff filed a workers' compensation claim, which she avers is "open

16  and ongoing." *Id.* ¶ 45. In February 2015, Plaintiff suffered another physical injury, which led to

17  a second workers' compensation claim. *Id.* ¶ 46. That claim was rejected. However, in the course

18  of reporting her claim, Plaintiff alleges that she spoke with personnel from Esalen's Human

19  Resources ("HR") department and complained that she was working as an emergency nurse

20  without pay. Plaintiff contends that she asked Esalen's HR personnel to bring her complaints to

21  the attention of Scott Stillinger ("Stillinger"), Esalen's Head of HR and Education.

22     In May 2015, Plaintiff "was forced to go to England for a family medical crisis." *Id.* ¶ 48.

23  In September 2015, as Plaintiff prepared to return to the United States, Stillinger contacted

24  Plaintiff and informed Plaintiff that she had been fired. *Id.* ¶¶ 49–50.

25     Over the course of her time at Esalen, Plaintiff alleges that Defendants knew that Plaintiff

26  performed unpaid medical nursing services and that Defendants misrepresented the hours that

27  Plaintiff worked in order to avoid paying her unemployment insurance, health insurance, and other

28  
Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    benefits. *Id.* ¶¶ 90–92.

2        **B.  Procedural History**

3            Plaintiff filed the original complaint in this action on November 30, 2015.  ECF No. 1

4    ("Compl.").  Plaintiff filed the FAC on March 30, 2016.  The FAC alleges eighteen causes of

5    action.  Some of these causes of action have been brought only against Esalen, while others have

6    been brought against Esalen; Scott Stillinger; Esalen's Board of Trustees; and the individual

7    members of Esalen's Board of Trustees.[1]  On May 17, 2016, Defendants filed the instant motion to

8    dismiss.  Plaintiff filed a response on May 31, 2016, and Defendants filed a reply on June 7, 2016.

9    ECF No. 17 ("Opp'n"); ECF No. 18 ("Reply").

10   **II.      LEGAL STANDARD**

11       **A.  Motion to Dismiss**

12           Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

13   action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

14   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

15   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

16   defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

17   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

18   unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For

19   purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the

20   complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

21   party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

22           Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely

23   because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064

24   (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

25

26   _____

27   [1] The individual members of Esalen's Board of Trustees are: Jeff Kripal, Sam Yah, Mary Ellen
     Klee, Bill James, Chip Conley, Anisa Mehdi, Jay Oglivy, Gordon Wheeler, Nancy Wheeler, Ben
     Tauber, and Michael Murphy.  FAC ¶¶ 10–20.

28   _____
                                                     4
     Case No. 15-CV-05457-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

"conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   DISCUSSION

Defendants move to dismiss the fourth, fifth, sixth, eighth, ninth, and eleventh causes of action in the FAC. Defendants also move to dismiss various causes of action against Stillinger and the individual members of Esalen's Board of Trustees. The Court addresses these two sets of arguments in turn.

### A. Motion to Dismiss Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Causes of Action

#### 1. Fourth Cause of Action: Retaliation in Violation of Public Policy (against Esalen)

"[E]mployment relationships in California are ordinarily 'at will,' meaning that an employer can discharge an employee for any reason." *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). However, in *Tameny v. Atlantic Richfield Co.*, 610 P.2d 1330 (Cal. 1980), "the California Supreme Court carved out an exception to [this general] at-will rule by recognizing a tort cause of action for wrongful terminations that violate public policy." 347 F.3d at 758. In order to plead a *Tameny* claim, the public policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the

public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Id.*

In the instant case, Plaintiff attempts to plead a *Tameny* claim based on Esalen's violation of two California statutory provisions: Cal. Labor Code § 1102.5 and Cal. Labor Code § 132a. The Court reviews these provisions in turn.

### a.   Cal. Labor Code § 1102.5

Known commonly as California's whistleblower statute, Cal. Labor Code § 1102.5 states that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b). "Violations of California Labor Code § 1102.5 can support a" *Tameny* claim, *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012), because Cal. Labor Code § 1102.5 "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation," *McVeigh v. Recology San Francisco*, 152 Cal. Rptr. 3d 595, 616 (Ct. App. 2013).

"In order to establish a prima facie case for a labor code violation under § 1102.5, a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1030–31 (E.D. Cal. 2015) (internal quotation marks omitted).

Here, Plaintiff alleges that she spoke with Esalen HR personnel after filing her February 2015 workers' compensation claim. During this meeting, she stated that she was not being paid for her medical assistance work, in violation of Cal. Labor Code § 1194, which provides a cause of action to "any employee receiving less than the legal minimum wage or . . . legal overtime." Cal. Labor Code § 1194. Plaintiff further asked that these complaints be reported to Esalen's Head of HR and Education, Scott Stillinger. FAC ¶ 46. Plaintiff avers that Esalen subsequently terminated Plaintiff for her decision to speak out and report her complaints to Stillinger.

6

1    Taken together, these allegations sufficiently plead a *Tameny* claim based on Cal. Labor

2    Code § 1102.5.  Plaintiff engaged in a protected activity (stating her belief that she should have

3    been compensated for her medical assistance), Plaintiff was subjected to an adverse employment

4    action (her firing), and Plaintiff alleges that these events were causally linked.  In similar

5    circumstances, courts have held that the decision to speak out over underpayment of wages or

6    overtime compensation may give rise to a colorable *Tameny* claim.  *See Gould v. Md. Sound*

7    *Indus., Inc.*, 37 Cal. Rptr. 2d 718, 724–26 (Ct. App. 1995) (holding that termination "in retaliation

8    for . . . reporting violations of the overtime wage law" gives rise to a *Tameny* claim).

9    Defendants do not challenge whether Plaintiff has properly pleaded a viable *Tameny* claim

10   based upon Cal. Labor Code § 1102.5.  Instead, Defendants argue only that Plaintiff's *Tameny*

11   claim based on Cal. Labor Code § 1102.5 is "duplicative" of the FAC's second cause of action,

12   which is a standalone Cal. Labor Code § 1102.5 claim.  Mot. at 5 n.2.  Such contentions lack

13   merit.  State and federal courts in California routinely allow litigants to proceed with a *Tameny*

14   claim that is derivative of a standalone Cal. Labor Code § 1102.5 claim.  *See Bowen v. M.*

15   *Caratan, Inc.*, 142 F. Supp. 3d 1007, 1029–32 (E.D. Cal. 2015) (denying summary judgment on

16   Cal. Labor Code § 1102.5 claim and *Tameny* claim based on Cal. Labor Code § 1102.5); *Nosal-*

17   *Tabor v. Sharp Chula Vista Med. Ctr.*, 191 Cal. Rptr. 3d 651, 662–65 (Ct. App. 2015) (same).

18   Accordingly, Defendants' motion to dismiss Plaintiff's *Tameny* claim as that claim is based upon

19   alleged violations of Cal. Labor Code § 1102.5 is DENIED.

20                          **b.   Cal. Labor Code § 132a**

21   Next, Plaintiff alleges that she was terminated because she "was exercising a statutory right

22   or privilege to Workers' Compensation Benefits" during her meeting with Esalen HR.  FAC ¶ 112.

23   This allegation implicates Cal. Labor Code § 132a(1), which states that "[a]ny employer who

24   discharges, or threatens to discharge, or in any manner discriminates against any employee

25   because he or she has filed or made known his or her intention to file a claim for compensation

26   with his or her employer . . . is guilty of a misdemeanor and the employee's compensation shall be

27   increased by one-half."  Cal. Labor Code § 132a(1).  Cal. Labor Code § 132a further provides that

28
Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    any actions arising from this statutory provision "are to be instituted by filing an appropriate

2    petition with the appeals board"—the Workers' Compensation Appeals Board ("WCAB").  *Id.*

3    "The [WCAB] is vested with full power, authority, and jurisdiction to try and determine finally all

4    matters specified in this section."  *Id.*

5            In interpreting the above provisions, the California Court of Appeal has held that "section

6    132a does not qualify under case authority as the type of policy that can support a" *Tameny* claim.

7    *Dutra v. Mercy Med. Ctr. Mt. Shasta*, 146 Cal. Rptr. 3d 922, 924 (Ct. App. 2012).  As the *Dutra*

8    court noted, because Cal. Labor Code § 132a includes specific enforcement mechanisms,

9    "[a]llowing [a] plaintiff to pursue a" *Tameny* claim "would impermissibly give [the plaintiff]

10   broader remedies and procedures than that provided by the statute." *Id.* at 926.   In other words, it

11   would allow plaintiffs to circumvent the specific Cal. Labor Code § 132a(1) provisions which

12   direct plaintiffs to present their claims before the WCAB.

13           Plaintiff agrees that she "is precluded from relying on Labor Code section 132(a) as the . . .

14   statutory ground for bringing a claim for wrongful termination in violation of public policy."

15   Opp'n at 8.  Plaintiff, however, argues that her *Tameny* claim is nonetheless viable under Cal.

16   Labor Code § 98.6.  Cal. Labor Code § 98.6 states that a "person shall not discharge an employee

17   or in any manner discriminate, retaliate, or take any adverse action against any employee . . .

18   because of the exercise by the employee . . . of any rights afforded him or her."  Cal. Labor Code §

19   98.6(a).  According to Plaintiff, Cal. Labor Code § 98.6 provides her with an alternative avenue to

20   pursue a *Tameny* claim, "even [if] the complained upon retaliation involves the filing (or an

21   intention of filing) a Workers Compensation claim."  Opp'n at 8.

22           In support of her argument, Plaintiff cites *Gwin v. Target Corp.*, 2013 WL 5424711 (N.D.

23   Cal. Sept. 27, 2013).  In *Gwin*, plaintiff asserted a *Tameny* cause of action based on violations of

24   Cal. Labor Code § 132a and Cal. Labor Code § 98.6.  The *Gwin* court rejected plaintiff's attempt

25   to plead a *Tameny* claim based on Cal. Labor Code § 132a.  *Id.* at *7.  As the court noted,

26   plaintiff's "claim for wrongful termination in violation of California Labor Code § 132a fails as a

27   matter of law because the Workers' Compensation Appeals Board is the exclusive forum for

28

8

1    claims asserted under this provision." *Id.*

2          Regarding Cal. Labor Code § 98.6, the *Gwin* court acknowledged that plaintiff's alleged

3    Cal. Labor Code § 98.6 violation was entirely derivative of plaintiff's alleged Cal. Labor Code §

4    132a violation.  *See id.* at \*14 (describing Cal. Labor Code § 98.6 claim as "based on the alleged

5    violation of rights protected under § 132a").  The court further acknowledged that plaintiff had

6    "present[ed] [a] difficult [legal] question[] that ha[d] not [yet] been addressed by [the] California

7    courts"—that is, whether individuals could move forward with a *Tameny* claim based on a Cal.

8    Labor Code § 98.6 violation that is based upon a Cal. Labor Code § 132a violation.  *Id.* at \*8.

9          The *Gwin* court, however, ultimately found in plaintiff's favor, and concluded that Cal.

10   Labor Code "§ 98.6 provides a remedy for the alleged wrongful conduct to the extent [p]laintiff

11   alleges [defendant] violated his rights under [Cal. Labor Code] § 132a." *Id* at \*10.  In support of

12   this finding, the *Gwin* court cited the California Supreme Court's decision in *City of Moorpark v.*

13   *Superior Court*, 959 P.2d 752 (Cal. 1998), where the court held that "§ 132a does not provide an

14   exclusive remedy for discrimination that falls under that provision."  *Id.*

15         The *Gwin* court misreads *Moorpark*.  In *Moorpark*, the California Supreme Court

16   considered "whether FEHA [the California Fair Employment and Housing Act] and common law

17   wrongful discharge remedies are available to an employee who has suffered discrimination based

18   on a work-related disability."  959 P.2d at 755.  After reviewing case law and legislative history

19   pertinent to FEHA, the California Supreme Court determined that "section 132a does not provide

20   an exclusive remedy and does not preclude an employee from pursuing FEHA and [other]

21   common law wrongful discharge remedies."  *Id.* at 761.  As the California Supreme Court noted,

22   "[b]ecause the standards for establishing disability discrimination may well be different under the

23   FEHA than under section 132a, a decision in an employee's favor on a section 132a petition

24   would not establish a FEHA violation," and vice versa.  *Id.*

25         This same reasoning does not apply to Cal. Labor Code § 98.6 claims which are entirely

26   derivative of Cal. Labor Code § 132a claims because the § 98.6 claim and the § 132a claim in the

27   instant case share the same standards and are overlapping. As noted above, Cal. Labor Code §

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

28

United States District Court
Northern District of California

1    132a forbids an employer from "discharg[ing] . . . any employee because he or she has filed or

2    made known his or her intention file a claim for compensation."  Cal. Labor Code § 132a.  Cal.

3    Labor Code § 98.6, on the other hand, forbids an employer from "discharg[ing] . . . any employee .

4    . . because of the exercise by the employee . . . of any rights afforded him or her."  Cal. Labor

5    Code § 98.6.  In other words, Cal. Labor Code § 98.6 encompasses all possible claims that could

6    arise out of Cal. Labor Code § 132a; Cal. Labor Code § 132a violations are but a subset of Cal.

7    Labor Code § 98.6 violations.  Thus, Plaintiff's *Tameny* claim based on Cal. Labor Code § 98.6

8    would rise and fall entirely upon the viability of Plaintiff's underlying Cal. Labor Code § 132a

9    claim.  Thus, *Moorpark* is inapplicable to the instant case, and the Court finds that *Moorpark* does

10   not suggest that plaintiffs could plead a *Tameny* cause of action by disguising a Cal. Labor Code §

11   132a violation as a Cal. Labor Code § 98.6 violation.

12           Moreover, as noted above, state and federal courts agree that "a claim under § 132a must

13   be brought to the WCAB; the WCAB is the exclusive forum for claims under § 132a."  *Stone v.*

14   *Severn Trent Servs., Inc.*, 2014 WL 3837481, *2 (E.D. Cal. July 30, 2014) (citing cases).  With

15   this point of law in mind, it would make little sense under California law to allow parties to use

16   Cal. Labor Code § 98.6 to indirectly plead a *Tameny* claim based on Cal. Labor Code § 132a.

17           Indeed, the Court believes that the California Legislature did not intend to limit the types

18   of remedies available under Cal. Labor Code § 132a, only to then allow plaintiffs to freely pursue

19   those same remedies from a Cal. Labor Code § 98.6 violation based on a Cal. Labor Code § 132a

20   violation.  Such a reading—as adopted by the *Gwin* court—would render superfluous the Cal.

21   Labor Code § 132a provisions which require individuals to present their grievances before the

22   WCAB.  *See Peralta Cmty. Coll. Dist. v. Fair Employment & Hous. Comm.*, 801 P.2d 357, 363

23   (Cal. 1990) ("[I]f the Legislature had intended the general words to be used in their unrestricted

24   sense, it would not have mentioned the particular things or classes of things which would in that

25   event become mere surplusage.").

26           Finally, in the three years since its publication, no state or federal court has followed *Gwin*

27   and held that a plaintiff may plead a *Tameny* cause of action based on a Cal. Labor Code § 98.6

28
                                                         10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

violation that is derivative of a Cal. Labor Code § 132a violation.  For the reasons stated above, the Court declines to follow *Gwin* in the instant case.

Accordingly, Defendant's motion to dismiss Plaintiff's *Tameny* cause of action as it is based upon a Cal. Labor Code § 98.6 or Cal. Labor Code § 132a violation is GRANTED. Moreover, the Court finds that Plaintiff can not, as a matter of law, use Cal. Labor Code § 98.6 as a back door for a *Tameny* claim based upon Cal. Labor Code § 132a.  Accordingly, leave to amend would be futile, and Defendant's motion to dismiss Plaintiff's *Tameny* cause of action as it is based upon a Cal. Labor Code § 98.6 or Cal. Labor Code § 132a violation is GRANTED with prejudice.

### 2.  Fifth Cause of Action: Breach of Covenant of Good Faith and Fair Dealing (against Esalen)

In California, "the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  The FAC's fifth cause of action alleges that Defendants breached the covenant of good faith and fair dealing by failing to pay wages earned and by wrongfully terminating Plaintiff.

Defendants seek dismissal of this cause of action because, Defendants contend, "there was . . . no written employment contract between the parties."  Mot. at 5.  As Defendants note, the FAC does not allege that Plaintiff had a written contract with Defendants and does not specify which contractual provisions Defendants "interfered with" in breaching the covenant of good faith and fair dealing.  732 F. Supp. 2d at 968.  As such, Defendants argue that they could not have breached the covenant of good faith and fair dealing.

Plaintiff's opposition does not respond to Defendants' arguments—Plaintiff's opposition does not, in fact, even mention the covenant of good faith and fair dealing.  Because Plaintiff has

11

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

failed to respond to Defendants arguments and because, based on the FAC, Defendants' arguments appear well taken, Defendants' motion to dismiss Plaintiff's cause of action for breach of the covenant of good faith and fair dealing is GRANTED.  Given the lack of briefing from Plaintiff, it is unclear whether Plaintiff's cause of action is futile.  Accordingly, the Court shall—out of an abundance of caution—provide Plaintiff leave to amend.  Any subsequent complaints must cure the specific deficiencies identified in Defendants' motion to dismiss or face dismissal with prejudice.  Plaintiff is, moreover, on notice that failure in the future to oppose Defendants' arguments as to any other causes of action will result in a dismissal of that cause of action with prejudice.

### 3.  Sixth Cause of Action: Fiduciary Duty and Constructive Trust (against all Defendants)

Next, "Plaintiff's Sixth Cause of Action calls for a Breach of Fiduciary Duty and Constructive Trust [by] Defendants, including Esalen, its managing agents and Board of Trustees[,] for failing to pay Plaintiff her earned wages, including overtime and premium pay for on-call and stand-by duties."  Opp'n at 10.

In California, "[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages."  *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).  As to the first element, the existence of a fiduciary relationship, a plaintiff must demonstrate a relationship "wherein one of the parties is in [sic] duty bound to act with the utmost good faith for the benefit of the other party."  *Wolf v. Superior Court*, 130 Cal. Rptr. 2d 860, 863 (Ct. App. 2003).  Such a relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent."  *Id.*  "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal."  *Id.*

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    "[A]s a general matter, the fact of an employer-employee relationship alone is insufficient

2    to create a fiduciary relationship." *Ryan v. Microsoft Corp.*, 2015 WL 1738352, *14 (N.D. Cal.

3    Apr. 10, 2015) (citing *Salsgiver v. Am. Online, Inc.*, 32 F. App'x 894 (9th Cir. 2002)); *see also*

4    *Sci. of Skincare, LLC v. Phytoceuticals, Inc.*, 2009 WL 2050042, *3 (C.D. Cal. July 7, 2009) ("An

5    employer-employee relationship, without more, is not a fiduciary relationship.").

6    Plaintiff alleges no facts and cites no legal authority to show that Plaintiff's relationship

7    with Defendants was in any way different from an ordinary employer-employee relationship, or

8    that either Plaintiff or Defendants reposed, accepted, or assumed confidence in the other party as

9    defined above.  Nor does Plaintiff's employment relationship with Defendants bear any of the

10   characteristics of a traditional fiduciary relationship, such as that of a principal and an agent, a

11   trustee and a beneficiary, or a business partnership.

12   Defendant's motion to dismiss Plaintiff's cause of action for breach of fiduciary duty and

13   constructive trust is therefore GRANTED.  Plaintiff, however, shall have leave to amend, as it is

14   possible that, via amendment, Plaintiff will be able to show a fiduciary relationship between

15   Plaintiff and Defendants beyond the ordinary employer-employee relationship.

16   **4. Eighth and Eleventh Cause of Action: Negligent Hiring, Retention, Supervision,**
     **and Training (against Esalen) / Negligence (against all Defendants)**

17

18   Plaintiff's eighth cause of action alleges that Esalen "negligently hired, retained, managed,

19   controlled, supervised, and trained its managers." FAC ¶ 141.  "But for this negligent hiring,

20   retaining, managing, controlling, supervising and training," Plaintiff alleges that she "would not

21   have been subjected [to] the illegal conduct described and alleged." *Id.*  Relatedly, Plaintiff's

22   eleventh cause of action contends that Defendants owed a duty of care to Plaintiff "to pay earned

23   wages and to provide true and accurate pay records." *Id.* ¶ 152.  According to Plaintiff,

24   Defendants' failure to properly pay Plaintiff and properly document Plaintiff's pay gives rise to a

25   cause of action for negligence.

26   Both of these causes of actions are barred by the workers' compensation exclusivity

27   doctrine.  In California, "the worker's compensation system is the exclusive remedy for workplace

28

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1     injuries.  Where the misconduct attributed to the employer is actions that are a normal part of the

2     employment relationship," an employee's claims must proceed through the workers'

3     compensation system.  *Bragg v. E. Bay Regional Park Dist.*, 2003 WL 23119278, *7 (N.D. Cal.

4     Dec. 29, 2003) (citing *Cole v. Air Oaks Fire Protection Dist.*, 729 P.2d 743, 750 (Cal. 1987)).

5            Pursuant to this doctrine, state and federal courts in California have frequently held that

6     negligence and negligent supervision claims "asserted by one employee against her co-workers

7     and her employer" are "barred by the worker's compensation exclusivity doctrine." *Id.* These

8     claims, courts reason, arise out of the "normal risk of the compensation bargain" between

9     employer and employee.  *Scott v. Solano Cnty. Health and Soc. Servs. Dep't*, 459 F. Supp. 2d 959,

10    971 (E.D. Cal. 2006) (internal quotation marks omitted); *see also Coit Drapery Cleaners, Inc. v.*

11    *Sequoia Ins. Co.*, 18 Cal. Rptr. 2d 692, 699 (Ct. App. 1993) ("[A]ny claim for mere negligence by

12    [the employer] would be barred . . . by the workers' compensation laws.").

13           To be clear, workers' compensation exclusivity does not bar *all* employer misconduct

14    claims. *Jefferson v. Kellogg Sales Co.*, 2008 WL 4862511, *2 (N.D. Cal. Nov. 11, 2008)

15    ("Certain types of injurious employer misconduct, however, are not covered by [workers'

16    compensation] exclusivity.").  When "employers step out of their proper role or engage in conduct

17    of questionable relationship to the employment, they may not then hide behind the shield of

18    workers' compensation." *Id.* The primary example of this exception is when employers subject

19    their employees to racial discrimination or sexual harassment. *Id.* (citing cases).  As courts have

20    noted, such harassment or discrimination falls outside the workers' compensation exclusivity

21    because they are not considered a normal risk of the compensation bargain.

22           In the instant case, Plaintiff does not allege that Defendants subjected her to racial

23    discrimination or sexual harassment.  Instead, Plaintiff's negligence and negligent hiring claims

24    arise out of the "compensation bargain" between Plaintiff and Defendants: Plaintiff requested pay

25    and proper documentation for her medical assistance, which Defendants declined to provide.

26    Thus, there are no allegations which show that Plaintiff's negligence and negligent hiring claims

27    fall outside the normal risk of the employment relationship.

28
                                          14

United States District Court
Northern District of California

Accordingly, Defendants' motion to dismiss the eighth and eleventh causes of action, for negligence and negligent supervision, is GRANTED.  However, it is possible that Plaintiff may be able to allege sufficient facts to demonstrate that these causes of action fall under an exception to the workers' compensation exclusivity doctrine.  As such, amendment may not be futile, and Plaintiff shall have leave to amend.

### 5.  Ninth Cause of Action: Intentional Infliction of Emotional Distress (against all Defendants)

Plaintiff's ninth cause of action states that Defendants' conduct "was intentional, extreme and outrageous, and should not be tolerated in a civilized society such as ours."  FAC ¶ 144.  According to Plaintiff, Defendants intentionally converted Plaintiff's wages, subjected Plaintiff to a hostile work environment,[2] and terminated Plaintiff because she engaged in a protected activity.  *Id.*  Like Plaintiff's negligence and negligent hiring claims, Plaintiff's cause of action for intentional infliction of emotional distress is barred by worker's compensation exclusivity.

The California Supreme Court, in fact, addressed this very issue in *Cole v. Fair Oaks Fire Department District*.  The *Cole* court held that "an employee suffering emotional distress causing disability" for misconduct related to "demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances" can not avoid workers' compensation exclusivity simply "by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability."  729 P.2d at 750.  Following *Cole*, many courts have found intentional infliction of emotional distress claims barred by workers' compensation exclusivity.  *See, e.g.*, *Miklosy v. Regents of the Univ. of Cal.*, 188 P.3d 629, 710–11 (Cal. 2008) (rejecting intentional infliction of emotional distress claim because "[t]he alleged wrongful conduct . . . occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted.").

---

[2] The FAC makes a general, conclusory allegation that Plaintiff was subjected to a hostile work environment, but does not allege that Plaintiff was subject to sex, race, or any other form of unlawful discrimination.

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

As with Plaintiff's negligence and negligent supervision claims, Plaintiff has alleged no facts demonstrating that Plaintiff's emotional distress arose outside the normal course of Plaintiff's employment.  Thus, Defendants' motion to dismiss Plaintiff's cause of action for intentional infliction of emotional distress is GRANTED.  However, for the same reasons as Plaintiff's negligence and negligent hiring claims, the Court finds that amendment may not be futile and thus provides Plaintiff leave to amend.

**B.  Motion to Dismiss Claims Against Scott Stillinger and Individual Members of Board of Trustees**

The FAC asserts the same twelve causes of action against Scott Stillinger ("Stillinger"), Esalen's Head of HR and Education, and the individual members of the Board of Trustees.  Of these twelve causes of action, three—breach of fiduciary duty, negligence, and intentional infliction of emotional distress—have already been dismissed.

The remaining nine causes of action all arise out of the Fair Labor Standards Act ("FLSA") or the California Labor Code.  *See* FAC ¶¶ 132–39, 147–150, 155–61, 179–98 (seventh, tenth, twelfth, fifteenth, sixteenth, seventeenth, and eighteenth causes of action, alleging violations of California Labor Code); *id.* ¶¶ 172–78 (fourteenth cause of action under California Unfair Competition Law for alleged violations of California Labor Code); *id.* ¶¶ 162–71 (thirteenth cause of action, alleging violations of FLSA).  Defendants move to dismiss these causes of action against Stillinger and the individual members of the Board of Trustees because, Defendants argue, neither Stillinger nor the individual Board members are "employers" for purposes of FLSA or California Labor Code liability.  The Court addresses these statutes in turn.

**1.  FLSA**

Plaintiff's thirteenth cause of action alleges that Stillinger and the individual members of the Board of Trustees violated 29 U.S.C. § 207(a)(1).  FAC ¶ 163.  Under this FLSA provision, certain "employers" must "pay employees one and one-half wages for hours exceeding 40 hours in a work week."  *Brown-Younger v. Precision Op.*, 486 F. App'x 644, 645 (9th Cir. 2012).

In interpreting 29 U.S.C. § 207(a)(1), the Ninth Circuit has held that, "[w]here an

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1    individual exercises control over the nature and structure of the employment relationship, or

2    economic control over the relationship, that individual is an employer within the meaning of the

3    [FLSA], and is subject to liability." *Boucher v. Shaw*, 582 F.3d 1087, 1090 (9th Cir. 2009)

4    (internal quotation marks omitted).  More specifically, for individual liability (as opposed to

5    corporate liability) under FLSA, individual officers must have "a significant ownership interest

6    with operational control of significant aspects of the corporation's day-to-day functions; the power

7    to hire and fire employees; the power to determine salaries; and the responsibility to maintain

8    employment records." *Id.* (internal quotation marks and alterations omitted).

9         The FAC fails to meet this requirement as to both Stillinger and the individual members of

10   the Board of Trustees.  As to Stillinger, for instance, the FAC alleges (1) that Plaintiff sought to

11   bring her grievances about unpaid work to the attention of Stillinger, (2) that Stillinger informed

12   Plaintiff that she had been terminated; and (3) that Stillinger led a community meeting to inform

13   Esalen employees that Plaintiff had been terminated.  These allegations do not show that Stillinger

14   had economic control over Plaintiff, or that Stillinger reviewed Plaintiff's day-to-day work, set

15   Plaintiff's salary, or maintained Plaintiff's employment records.  At best, these allegations

16   demonstrate that Plaintiff simply learned from Stillinger that she had been fired—they do not

17   show that Stillinger actually had firing or hiring authority over Plaintiff.

18        The allegations regarding the individual members of the Board of Trustees are similarly

19   unavailing.  Outside of the FAC's introductory paragraphs, which lists the name and residence of

20   each individual Trustee, FAC ¶¶ 10–20, the only other mention of any individual Trustee is in

21   paragraph 39, where Plaintiff states that Bill James, a Board member, offered to pay Plaintiff's

22   medical malpractice insurance, *id.* ¶ 39.  This lone allegation does not demonstrate that James or

23   any of the other Board of Trustees had economic control over Plaintiff.  Again, there are no

24   allegations in the FAC to show that the individual members of the Board of Trustees controlled

25   day-to-day operations, had hiring or firing authority, set Plaintiff's salary, or collected Plaintiff's

26   employment records.

27        Tellingly, in opposing the instant motion, Plaintiff acknowledges that "[t]he Ninth

28

17

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    Circuit's four factors for 'employer status'"—"(1) the power to hire and fire the employees, (2)

2    supervis[ing] and controll[ing] employee work schedules or conditions of employment, (3)

3    determin[ing] the rate and method of payment, and (4) maintain[ing] employment records"—are

4    "glaringly missing" from the instant case.  Opp'n at 6 n.4.  Nevertheless, Plaintiff insists that "the

5    Board of Trustees acted as [Plaintiff's] implicit employer by providing her a stipend for her

6    medical malpractice insurance."  *Id.* at 6.  This statement is not consistent with the FAC, as there

7    are no allegations in the FAC that any Board member outside of James offered to pay for

8    Plaintiff's medical malpractice insurance.  In any event, Plaintiff has cited no authority to suggest

9    that an offer to pay medical malpractice insurance is, standing alone, sufficient to confer employer

10   status under FLSA.  The Court has found none in its own research, and thus declines to find that

11   James or any other Board member was Plaintiff's employer under FLSA.

12        **2.  California Labor Code**

13        Under the California Labor Code, "'[t]o employ' has 'three alternative definitions.'"

14   *Castaneda v. Ensign Gp., Inc.*, 177 Cal. Rptr. 3d 581, 583 (Ct. App. 2014).  "It means: (a) to

15   exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or*

16   (c) to engage, thereby creating a common law employment relationship."  *Id.* (quoting *Martinez v.*

17   *Combs*, 231 P.3d 259, 278 (Cal. 2010)).

18        As to (a), the exercise of control over the wages, hours, or working conditions, the Court

19   has already determined that the FAC does not show that Stillinger or the members of the Board of

20   Trustees had control over Plaintiff's wages, hours, or working conditions.

21        As to (b), the California Supreme Court has held that an individual "suffers or permits

22   work" when that individual "knows that persons are working in his or her business without having

23   been formally hired, or while being paid less than the minimum wage, [and] clearly suffers or

24   permits that work by failing to prevent it, while having the power to do so."  *Martinez*, 231 P.3d at

25   281.  The allegations in the FAC fail to satisfy this requirement.  There is no indication that, other

26   than James, any Board member knew that Plaintiff was providing unpaid medical assistance.

27   Moreover, to the extent that James and Stillinger knew that Plaintiff's medical assistance was

28
Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    unpaid, there is nothing in the FAC to indicate that James and Stillinger had "the power to"

2    address this issue.  *Id.*

3            Finally, turning to (c), the common law employment test, "[u]nder the common law,

4    corporate agents acting within the scope of their agency are not personally liable for the corporate

5    employer's failure to pay its employees' wages."  *Reynolds v. Bement*, 116 P.3d 1162, 1169 (Cal.

6    2005).  As the California Supreme Court has observed, "corporate agents and employees acting for

7    and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's

8    contract."  *Id.* at 1169–70.  Nor, for that matter, can "directors or officers of a corporation . . .

9    incur personal liability for torts of the corporation merely by reason of their official position."  *Id.*

10   at 1170 (alteration omitted); *see also Martinez*, 231 P.3d at 279 ("[The common law] definition of

11   'employer' does not impose liability on individual corporate agents acting within the scope of

12   their agency.").  Based upon the FAC, there is nothing to suggest that Stillinger and the individual

13   members of the Board of Trustees acted outside the scope of their agency.  Accordingly, neither

14   Stillinger nor the individual members of the Board of Trustees can be held liable as employers

15   under the common law employment test.

16           In sum, neither Stillinger nor the individual members of the Board of Trustees are

17   employers under FLSA or the California Labor Code.  Defendants' motion to dismiss the seventh,

18   tenth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of

19   action against Stillinger and the individual members of the Board of Trustees is therefore

20   GRANTED.  Plaintiff, however, could assert factual allegations to demonstrate an employer-

21   employee relationship with Stillinger and the individual members of the Board of Trustees.

22   Amendment would therefore not be futile, and Plaintiff shall have leave to amend.

23   **IV.   CONCLUSION**

24           To conclude:

25           1.   As to the FAC's fourth cause of action, for retaliation in violation of public policy,

26                Defendants' motion to dismiss Plaintiff's *Tameny* claim to the extent that the claim is

27                based on Cal. Labor Code § 132a and Cal. Labor Code § 98.6 is GRANTED with

28
     Case No. 15-CV-05457-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

prejudice.  Defendants' motion to dismiss Plaintiff's *Tameny* claim insofar as it is based on Cal. Labor Code § 1102.5 is DENIED.

2. As to the FAC's fifth cause of action, for breach of the covenant of good faith and fair dealing, Defendants' motion to dismiss is GRANTED without prejudice.

3. As to the FAC's sixth cause of action, for breach of fiduciary duty and constructive trust, Defendants' motion to dismiss is GRANTED without prejudice.

4. As to the FAC's seventh cause of action, for breach of contract and unjust enrichment, Defendants' motion to dismiss as Defendants Stillinger and the individual members of the Board of Trustees is GRANTED without prejudice.

5. As to the FAC's eighth and eleventh causes of action, for negligent hiring and negligence, Defendants' motion to dismiss is GRANTED without prejudice.

6. As to the FAC's ninth cause of action, for intentional infliction of emotional distress, Defendants' motion to dismiss is GRANTED without prejudice.

7. As to the FAC's tenth, twelfth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of action, for violations of the California Labor Code, Defendants' motion to dismiss as Defendants Stillinger and the individual members of the Board of Trustees is GRANTED without prejudice.

8. As to the FAC's thirteenth cause of action, for FLSA violations, Defendants' motion to dismiss as Defendants Stillinger and the individual members of the Board of Trustees is GRANTED without prejudice.

Defendant did not move to dismiss the following causes of action, and these causes of action therefore survive dismissal:

1. The FAC's first cause of action, for FLSA violations by Esalen.

2. The FAC's second cause of action, for violations by Esalen of Cal. Labor Code § 1102.5.

3. The FAC's third cause of action, for wrongful termination by Esalen.

In addition, as to the seventh, tenth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth,

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   seventeenth, and eighteenth causes of action, Defendants did not move to dismiss Esalen or

2   Esalen's Board of Trustees as Defendants.  These causes of action, as pleaded against Esalen and

3   Esalen's Board of Trustees, therefore survive dismissal.

4      Should Plaintiff elect to file an amended complaint curing the deficiencies identified

5   herein, Plaintiff shall do so within thirty days of this Order.  Failure to meet this thirty-day

6   deadline or failure to cure the deficiencies identified will result in a dismissal with prejudice of the

7   deficient claims or theories.  Plaintiffs may not add new causes of actions or parties without leave

8   of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

9   **IT IS SO ORDERED.**

10  Dated:  July 24, 2016.

11  *Lucy H. Koh*

12  LUCY H. KOH
    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 15-CV-05457-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California